UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| BRYANT JA JUAN LEE CULBERSON, | : | Case No. 2:22-cv-3671 |
| | : | |
| Plaintiff, | : | |
| | : | Chief Judge Algenon L. Marbley |
| vs. | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| FRANKLIN COUNTY CORRECTION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATIONS**

Plaintiff, Bryant Ja Juan Lee Culberson, has filed a pro se Complaint with this Court. (ECF No. 1-1.) The Complaint raises various concerns about conditions at the Franklin County Corrections Center where Culberson was previously in custody. (*Id*., PageID 9, 13; *see* Notice of New Address, ECF No. 5.)

The matter is before the undersigned Magistrate Judge to conduct an initial screening of the Complaint. For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **DISMISS** the Complaint in its entirety under 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2).

**I.      Initial Screening Standard**

Because Culberson was a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity" when he filed his Complaint, and because he has been permitted to proceed *in forma pauperis* (*see* ECF No. 7), the Court is required to screen his Complaint. 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2).

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable *legal* basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable *factual* basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

A complaint must also be dismissed if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a

2

Placomplaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

## II. Parties and Claims

Plaintiff Culberson appeared to be, when he filed this case, a pretrial detainee at the Franklin County Corrections Center (FCCC). He has since been released from custody.[1]

Culberson identifies eight defendants: Franklin County Sheriff Dallas Baldwin, Major Mike Turner, Tonja Phillips, Syble Sayon, Nalea Whiting-Cobb, Tresalyn Butler, Carolyn Pierce, and Jason Poindexter. (ECF No. 1-1, PageID 9, 12.) It is implied that these individuals are all affiliated with FCCC. In addition, Culberson names some John Does and Jane Does as defendants. (*Id*.) Culberson identifies these Defendants as the unknown staff members that run

---

[1] *See* online docket of *State of Ohio v. Bryant Culberson*, Franklin County, Ohio, Court of Common Pleas Case No. 20 CR 002370, available by name/case number search at https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/ (accessed Dec. 13, 2022). This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

3

certain programs at FCCC, such as AA and NA (presumably, Alcoholics Anonymous and Narcotics Anonymous).[2] (ECF No. 1-1, PageID 9, 12.) Finally, Culberson may have named "Franklin County Correction" as a defendant. (*See* ECF No. 1-1, PageID 9.)

The Complaint's Statement of Claim consists of a single page, but it lists several issues with Culberson's and other inmates' experiences at FCCC. (*See* ECF No. 1-1, PageID 13.) Culberson frames these issues as "problems," rather than constitutional deprivations. (*See* ECF No. 1-1, PageID 11.) Culberson's main concern appears to be that no rehabilitative or educational programs were available to FCCC inmates designated as "P.C." and that he was unable to go to AA, NA, church, or recreation—to make himself a better person—while in custody. (ECF No. 1-1, PageID 13.) He also alleges that: inmate meals did not contain 2,000 or 2,800 calories; FCCC staff denied all "call cards" for programs, recreation, and food; the commissary charged prices that were way over cost; he was beat up by staff members; and he was denied medical care. (*Id*.) Culberson seeks monetary damages of "one million per whole" and "one million each person." (ECF No. 1-1, PageID 14.)

Although it does not specify, the Undersigned reads the Complaint as seeking to raise claims under 42 U.S.C. § 1983. This statute allows a plaintiff to seek redress from state actors for "the deprivation of any rights, privileges, or immunities secured by the Constitution." *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a cause of action under Section 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted). Although Culberson does not

---

[2] The full list of "programs" includes: AA, NA, Church, Laundry, Maintenance, Phone Service, Recreation (inside or outside), Food Services, Medical, Administration, Commissary, Self Help Programs, Personal Development, High School Diploma, Social Services, Pathway for Men, Child Support, Anger Management, Commitment to Change, Domestic Violence, Thinking for a Change, and Mail Room. (ECF No. 1-1, PageID 12.)

4

identify any constitutional of federal law provisions, the Undersigned has endeavored to classify his claims as best appropriate. *See Barhite*, 377 F. App'x at 511 (citing *United States v. McDonald*, 326 F. App'x 880, 882 (6th Cir. 2009)) ("courts may elect to recharacterize pro se filings for the benefit of the pleader").

**III. Discussion**

The Undersigned concludes that, even if the pro se Complaint is read liberally, Culberson has failed to state a claim upon which relief may be granted against any of the Defendants.

    A.    <u>Identified Defendants in their Personal Capacities</u>

First and primarily, the Complaint fails to allege what any particular identified Defendant did that that violated Culberson's rights. A plaintiff suing several defendants must describe in the complaint how each defendant violated his or her rights. "The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege . . . facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)). Thus, "[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints." *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012).

5

Here, Culberson does not include allegations of specific wrongful conduct by any of the eight identified Defendants. There is no information to allow the Court to determine that (or how) Defendants Baldwin, Turner, Phillips, Sayon, Whiting-Cobb, Butler, Pierce, or Poindexter each allegedly violated Culberson's rights. In fact, there is no information whatsoever about who most of these defendants are. Although the Undersigned can construe a pro se complaint liberally, the Undersigned cannot attempt to match particular defendants with particular allegations where the plaintiff has failed to do so. Identifying who harmed the plaintiff and how they did so is a "basic pleading essential" required to state a claim.[3] *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) (courts "are not required to conjure up allegations not pleaded or guess at the nature of an argument."). The claims against these eight identified Defendants (Baldwin, Turner, Phillips, Sayon, Whiting-Cobb, Butler, Pierce, or Poindexter) in their personal capacities should be dismissed for this reason. *See Sanders v. Baldwin*, No. 2:19-cv-2438, 2019 WL 2579160, at *3 (S.D. Ohio June 24, 2019), *report and recommendation adopted*, 2019 WL 3891886 (S.D. Ohio

---

[3] As one court put it:

> In order to assert a cognizable § 1983 claim, a plaintiff must allege specific facts. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The required facts must provide adequate detail to support the claim, such as specific incidents of deprivation of a plaintiff's rights, how each defendant was involved, the names of other persons involved, dates, and places. The specific facts must also explain how the plaintiff himself was personally injured by the challenged conduct or condition, *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986), and how each defendant is responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Allegations premised upon mere conclusions and opinions fail to state an adequate claim, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and bare and conclusory allegations that a defendant personally deprived the plaintiff of constitutional or statutory rights are insufficient to state a cognizable claim. *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983).
>
> Furthermore, a complaint filed under § 1983 must also show a causal connection between the named defendants and the alleged constitutional deprivation. A § 1983 complaint must allege that specific conduct by the defendants was the proximate cause of the constitutional injury. *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986).

*Allen v. Aramark Corp.*, No. 3:07-cv-P260, 2009 WL 1126093, at *3 (W.D. Ky. Apr. 27, 2009).

Aug. 16, 2019) (dismissing complaint against Dallas Baldwin and others because there was insufficient factual content or context from which the Court could reasonably infer that these defendants were personally involved in a violation of the plaintiff's rights).

To the extent that Culberson does identify *Sheriff* Baldwin or *Major* Turner, it may be that these individuals were named because of their supervisory position or rank within the Franklin County Sheriff's Office or the Franklin County Corrections Center. But rank or position alone is insufficient to hold a person liable under § 1983; "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). For such a claim to proceed, "a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020)) (cleaned up). The Complaint here does not include any such factual allegations, which means that any supervisory claims against Defendants Baldwin and Turner (or any other supervisor) should be dismissed.

In addition, the Undersigned includes the following comments about two particular factual allegations in the Complaint in which Culberson may seek to impose personal liability.

       1.    <u>*Excessive force*</u>

Culberson asserts that he "was beat up by staff members of" the Deputy Sheriff at FCCC. (ECF No. 1-1, PageID 13.) The Complaint contains no further details about this alleged incident. Culberson does not explain allege *who* beat him up, *when* it occurred, *why* it happened *how* the staff members beat him up, *how* he behaved, or *how* he was injured (although his

7

statement that he was "still" having "pain in my head and back" might address this). (*Id*.) There is no allegation "that the force purposely or knowingly used against him was objectively unreasonable," nor any factual allegations in the Complaint from which the Court could so infer. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

It is true that "the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Fourteenth Amendment similarly protects pretrial detainees. *See Kingsley,* 576 U.S. at 397. But "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Here, it is impossible to tell which side of the line this alleged incident falls on. There are simply not "enough facts [in the Complaint] to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations that force was used and injury resulted are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555-556); *Riddle v. Rivard*, No. 14-11092, 2015 WL 74822, at *2 (E.D. Mich. Jan. 6, 2015) (dismissing vague claim that an officer physically assaulted plaintiff as insufficient under § 1983 because "conclusory allegations without material supporting facts are insufficient to state a claim"). For these reasons, the excessive force claim should be dismissed.[4]

---

[4] About a month after he filed his Complaint, Culberson submitted to the Court several pages of documents apparently in support of his claims. (*See* ECF No. 6.) Because these documents were not attached to the Complaint, they are not within the scope of the Undersigned's initial review. *See Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002, at *2 (6th Cir. May 23, 2018) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) ("explaining that a district court evaluating whether a complaint fails to state a claim may consider 'any exhibits attached' to the complaint"). Two of these documents suggest some additional facts potentially relevant to an excessive force claim. For instance, one document, labelled "DataLink HEALTHCARE PASSPORT," contains a handwritten notation on the side suggesting that certain medical complaints were related to Culberson being "Jumped by Deputy's 7 of them." (ECF No. 6, PageID 36.) Another, labelled "SICK CALL REQUEST," reflects his allegation that on April 28, he "was slammed down and hit in the head many of times by the Deputy's on 3rd

2. *Denial of medical care*

Culberson alleges that: "When I request for medical I was denied. I [am] still having pain in my head and back." (ECF No. 1-1, PageID 13.) There is no further information in the Complaint about when this occurred, whether it was related to the excessive force allegation, who denied him care, how long care was denied, or how serious his medical needs were.

A pretrial detainee has "a constitutional right to be free from deliberate indifference to serious medical needs under the Due Process Clause of the Fourteenth Amendment." *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) (citing *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 566 (6th Cir. 2020)). A plaintiff must prove that "that the alleged deprivation of medical care was serious enough to violate the [Constitution]." *Id*., (citing *Griffith*, 975 F.3d at 567). He must also "prove that the defendant acted 'deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*., at 606 (citing *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 597 (6th Cir. 2021)).

The two brief sentences in the Complaint do not satisfy these standards. The Complaint does not provide sufficient factual information to allow this Court to find that Plaintiff's medical needs were objectively, sufficiently serious, or that any particular Defendant acted deliberately

---

Shift." (ECF No. 6, PageID 37.) Had Culberson provided this information in his Complaint (or, if Culberson were to file an amended complaint including these allegations), the above analysis would change somewhat. *See* Fed. R. Civ. P. 15(a) (concerning amended pleadings). However, even with these documents, Culberson has still not identified *who* allegedly did these things to him and has not named them—as far as can be determined from the Complaint—as defendants in this case. The Undersigned notes that the John and Jane Doe Defendants named in the Complaint are identified as the "staff that run Programs" at FCCC. (*See* ECF No. 1-1, PageID 9 (naming John Does and Jane Does "That they refuse to give me names") and PageID 13 (indicating that they "would not give names of staff that run programs," and listing the programs).) If Culberson intends to identify them otherwise, he could make that clear in an amended complaint. But as the Complaint before the Court stands, and even if these additional allegations were included, it fails to include sufficient factual material to adequately state a claim on this issue.

and recklessly with respect to those needs.[5] *Greene*, 22 F.4th at 605-606. Accordingly, this claim should be dismissed.

B. John Doe and Jane Doe Defendants

Any claims against the John Doe and Jane Doe Defendants should also be dismissed. The Complaint identifies these Defendants as "staff that run programs" at FCCC. (*See* ECF No. 1-1, PageID 9 (naming John Does and Jane Does "That they refuse to give me names") and PageID 13 (indicating that they "would not give names of staff that run programs," and listing the programs).) But Culberson does not allege that each of the John and Jane Does running each individual program decided to specifically deny Culberson the ability to participate in that program. Rather, Culberson alleges that "all programs was took away from everybody in p.c." and "[a]ll the programs that could help make me a better man/person to the world are denied because I was placed in 'P.C.'" (ECF No. 1-1, PageID 13.) These allegations suggest that prisoners in "P.C." (which may stand for protective custody or protective control) are ineligible to participate in programming based on their security classification.

The Undersigned thus can plausibly infer that Culberson is alleging that a policy or custom of FCCC (or "Franklin County Correction" or Franklin County) exists that denies educational and rehabilitative programming to inmates in P.C. While a municipality may be held liable under § 1983 where its policy or custom causes a constitutional violation, *see Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005), no *constitutional* violation is alleged in this

---

[5] The additional documents provided by Culberson outside the Complaint would not save the claim. (*See* ECF No. 6.) These documents reflect that Culberson *was* treated for various medical issues on several occasions between October 28, 2021 and September 20, 2022. (*Id.*, PageID 36.) In addition to the dates on which medical care was apparently provided, two "SICK CALL REQUEST[S]" reflect that Culberson sought additional medication for headaches in November 2021, and additional medication for back and headache pain in September 2022. (*Id.*, PageID 46, 45.) These documents both appear to be signed by a nurse, but there is no indication how the nurse responded to the request for additional medication, or who the nurse was. Even with this information, there is still not enough information for the Court to find a plausible claim against any Defendant for deliberate indifference to a serious medical need under the standard discussed above.

respect. That is, an inmate "does not have a constitutional right to jail educational programs." *Lane v. Love*, No. 3:21-cv-346, 2021 WL 5710086, at *4 (E.D. Tenn. Dec. 1, 2021) (citing, among other cases, *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (holding that "[p]risoners have no constitutional right to rehabilitation, education, or jobs")); *see also Morrow v. Montgomery Cnty. Sheriff's Dep't*, No. 3:12-cv-801, 2012 WL 3561069, at *2 (M.D. Tenn. Aug. 16, 2012) (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981) and *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985)) ("there is no constitutional right to vocational or educational programs in prison."); *Parr v. Caruso*, No. 1:10-cv-109, 2010 WL 727106, at *3, *2 (W.D. Mich. Feb. 25, 2010) (collecting cases) (noting that "Federal courts consistently have found that prisoners have no constitutionally protected interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment" and that "prisoners do not have a fundamental right to prisoner reentry services under the Constitution.").

Additionally, any suggestion that Culberson was treated differently than other, non-P.C. inmates fails to state an equal protection claim, legally and factually. *See Grimmett v. Wilson Cnty. Jail*, No. 3:15-cv-116, 2015 WL 787228, at *2 (M.D. Tenn. Feb. 24, 2015) (citing *Carter v. Morgan*, 142 F.3d 432, 1998 WL 69810, at *2 (6th Cir. Feb. 10, 1998) (table) (which notes that a "claim of being treated differently from other inmates with regard to participation in the outside educational opportunities has no constitutional underpinnings."); *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (providing that, in order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis'") (citations omitted). Because the alleged denial of rehabilitative and educational programming does not

11

violate a *constitutional* right, Culberson's apparent claim against the John Doe and Jane Doe Defendants (or anyone else) based on this allegation cannot succeed under § 1983.

    C.    <u>Franklin County Correction</u>

Culberson may have also intended to name "Franklin County Correction" as a defendant. (*See* ECF No. 1-1, PageID 9.) To the extent he is attempting to sue the correctional facility itself, the claim fails because a correctional facility is not a "person" that can be sued under § 1983. As noted above, to state a cause of action under § 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by *a person* acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (emphasis added). A jail is not a "person" within the meaning of this statute. *See Williams v. Ohio Dep't of Rehab. & Corr.*, No. 1:20-cv-205, 2020 WL 2225884, at *2 (S.D. Ohio Mar. 16, 2020), *report and recommendation adopted*, 2020 WL 2216859 (S.D. Ohio May 7, 2020) (citing *Parker v. Michigan Dept. of Corrections*, 65 F. App'x. 922, 923 (6th Cir. 2003)) ("A correctional facility is not a 'person' subject to suit under 42 U.S.C. § 1983."). Any such claim should be dismissed.

    D.    <u>Municipal liability claims</u>

To the extent that Culberson is attempting to sue the municipality of Franklin County, Ohio,[6] or to sue the Defendants in their official capacities,[7] he has failed to state a viable § 1983

---

[6] The Sixth Circuit recently noted that "[i]t is an open question in this circuit 'whether a municipality's liability under § 1983 is predicated on first finding that an individual officer or employee is also liable.'" *Nichols v. Wayne Cnty., Michigan*, 822 F. App'x 445, 449 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2716 (2021) (quoting *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 511 n.12 (6th Cir. 2019)). A dissent took issue with this proposition. *See id*. (Moore, J., dissenting).

[7] It appears from context that the Defendants are all affiliated with FCCC and may be employees of the Franklin County Sheriff's Office or Franklin County, Ohio. A claim against them in their official capacities would be the equivalent to a suit against Franklin County. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989)) ("Matthews sued Chief Jones only in his official capacity as

claim. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom." *Nichols v. Wayne Cty. Mich.*, 822 F. App'x 445, 448 (6th Cir. 2020) (citing *Hardrick v. City of Detroit,* 876 F.3d 238, 243 (6th Cir. 2017)).

As discussed in Section III.B, the Complaint could be read as alleging a policy that P.C. inmates at FCCC may not utilize educational and rehabilitative programs. That claim should be dismissed for the reasons discussed there. Reading the Complaint liberally, it could additionally be read to suggest that other municipal policies or practices concerning church attendance, recreation, deficient meals, call cards, and commissary prices violated Culberson's rights. These claims too are without merit.

       3.     *Church attendance*

The Complaint contains a single phrase alleging that Culberson has "never been able to go to Church." (ECF No. 1-1, PageID 13.) "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion," although that right is limited by "the fact of incarceration" and "valid penological objectives." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). "Under § 1983, '[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely

---

the Chief of the Jefferson County Police Department. A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.").

held.'" *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)).

Culberson does not allege he has a sincerely held religious belief. (ECF No. 1-1, PageID 13.) Even assuming he does hold such a belief, the fact that he was in protective control or protective custody has been held to be a valid reason for restricting access to regular church services:

> Plaintiff's classification in protective custody presented a sufficient basis for defendant to preclude him from attending group religious services with the general population. "Prison officials have a recognized need to manage their prisons and control the movement of the inmate population in accordance with staffing and security issues." *Fisher v. McGinnis,* No. 00-1155, 2000 WL 1828486 at *2 (6th Cir. Dec. 5, 2000), *citing Turner,* 482 U.S. at 89 and *Spies v. Voinovich,* 173 F.3d 398, 403-04 (6th Cir.1999). Furthermore, "[t]he courts have consistently held that when prison officials offer evidence that security concerns prevent them from providing congregate religious services to inmates in administrative segregation, the deprivation is not violative of the first amendment so long as the inmates' rights of conscience are not infringed and they can request individual religious counseling." *Walker,* 771 F.2d at 930. Defendant's stated policy, that prisoners in protective custody could not attend group religious services with the general population, did not violate the First Amendment.

*Reischauer v. Jones*, No. 4:04-cv-42, 2005 WL 2045833, at *3 (W.D. Mich. Aug. 24, 2005). There is no allegation here that Culberson could not or did not seek religious services other than group church services. This claim, like his others, contains too little information to state a plausible claim on which relief may be granted.

    4.    *Recreation*

Culberson alleges without elaboration that that he and other P.C. inmates do not get inside or outside recreation at FCCC. (ECF No. 1-1, PageID 13.) "It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health." *See Rodgers v. Jabe*, 43 F.3d

1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)). Pretrial detainees like Culberson are protected by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment in this context.  In evaluating a similar claim, one court recently said:

> Porterfield alleges that the Defendants are "withholding my rec[reation]" to prevent him from calling his family. (ECF No. 1 at PageID 2 (the "Recreation Deprivation").) Porterfield alleges no dates when the Recreation Deprivation occurred.
>
> For pretrial detainees, the Fourteenth Amendments due process clause precludes "punish[ment] prior to an adjudication of guilt." *Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994) (quoting *Bell*, 441 U.S. at 535). The Supreme Court explained in *Bell* that, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Bell*, 441 U.S. at 539 (internal citations omitted). A pretrial detainee can demonstrate that he was subjected to unconstitutional punishment by showing: (1) "an expressed intent to punish on the part of the detention facility officials," or (2) that "a restriction or condition is not rationally related to a legitimate government objective or is excessive in relation to that purpose." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 717 (6th Cir. 2020) (citing *Bell*, 441 U.S. at 535 and *Kingsley*, 576 U.S. at 398). The Sixth Circuit has recognized that prisoners are entitled to outdoor recreation sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). Courts in the Sixth Circuit have recognized that "there is no applicable precedent requiring any minimum amount of outdoor recreation for prisoners." *Kizer v. Robertson Cnty.*, No. 3:17-cv-00715, 2018 WL 2164557, at *1 (M.D. Tenn. May 10, 2018) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). The Sixth Circuit has held only that "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)).
>
> Porterfield does not allege any facts about the circumstances of the Recreation Deprivation that demonstrate it: (1) was intended to punish Porterfield; (2) was not rationally related to a legitimate government objective; or (3) was excessive in relation to that purpose. The complaint does not allege the dates of the Recreation Deprivation, its duration, or the amount of recreation to which Porterfield would have been entitled had the Recreation Deprivation not been imposed. Porterfield

15

does not allege that the Recreation Deprivation was "a total or near-total deprivation of exercise or recreational opportunity." *See Rodgers*, 43 F.3d at 1086. The complaint in No. 21-2159 fails to allege sufficient facts demonstrating [a] claim for unconstitutional punishment from denial of recreation.

*Porterfield v. Shelby Cnty. Jail*, No. 21-2529, 2022 WL 3018191, at *4 (W.D. Tenn. July 29, 2022).

The brief allegation here suffers from many of the same issues. While the Complaint appears to allege a complete denial of recreation, Culberson does not allege any facts to demonstrate that the denial: "(1) was intended to punish [Culberson]; (2) was not rationally related to a legitimate government objective; or (3) was excessive in relation to that purpose." *Poterfield*, 2022 WL 3018191, at *4. Rather, the Complaint alleges that he and inmates *in protective custody or protective control* are denied recreation. (ECF No. 1-1, PageID 13.) This allegation itself suggests that the denial of recreation is rationally related to a legitimate government objective: protecting the inmates within this category. Additionally, there are no allegations about how long the denial of recreation lasted for Culberson, or how much recreation he would have been entitled to if he were not classified as P.C. *Porterfield,* 2022 WL 3018191, at *4. He therefore fails to state a claim on this issue.

### 5. *Deficient meals*

The Complaint contains a single sentence alleging that meals at FCCC did not contain 2,000 or 2,800 calories per day. (ECF No. 1-1, PageID 13.) In this context, a constitutional claim is raised "only when the food provided is inadequate 'to maintain normal health.'" *Perdue v. Ohio Dep't of Corr.*, No. 1:13-cv-878, 2014 WL 661707, at *5-6 (S.D. Ohio Feb. 19, 2014) (quoting *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977)).

There are no allegations in the Complaint that the food at FCCC was inadequate to maintain health, or that Culberson's health suffered because of it. There are likewise no

16

allegations about how long Culberson was allegedly served the insufficient meals, or how deficient the meals allegedly were. Without such information, Culberson fails to state a claim. *See Lane v. Love*, No. 3:21-cv-346, 2021 WL 5710086, at *4 (E.D. Tenn. Dec. 1, 2021) (citing *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011)) (rejecting "claims that the jail does not feed inmates two-thousand calories a day . . . as nothing in the complaint allows the Court to plausibly infer that Plaintiff does not receive enough food to sustain his good health"); *Montague v. Schofield*, No. 2:14-cv-292, 2016 WL 3977199, at *2 (E.D. Tenn. July 19, 2016) (quoting *Welch v. Spaulding*, 627 F. App'x 479, 483 (6th Cir. 2015) (dismissing claim where "Plaintiff does not indicate the length of time he has been served a diet which contains less than 2,200 calories a day," because "'the question of whether a prison official has knowingly provided a nutritionally inadequate diet is a fact-specific inquiry that requires consideration of, inter alia, daily caloric content, duration of the diet, and the nutritional needs of the prisoner.'")). There is simply not enough information in Culberson's Complaint to state a plausible claim on this basis.

### 6. *Call cards*

Culberson's allegation FCCC staff denied all "call cards" asking about programs, recreation, and food likewise fails to state a claim. (ECF No. 1-1, PageID 13.) Context suggests that call cards are informal requests made by inmates as part of FCCC's institutional grievance procedure. (*See* ECF No. 1-1, PageID 11.) Although this practice would indeed be frustrating, "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Thus, "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003); *see also Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("The 'denial of administrative grievances

17

or the failure to act' by prison officials does not subject supervisors to liability under § 1983.'"))

Thus, the denial of call cards alleged by Culberson does not itself state a claim under § 1983.

       7.     *Commissary prices*

Culberson also alleges that the FCCC commissary "charg[ed] prices that are way over cost." (ECF No. 1-1, PageID 13.) This allegation fails to point to a constitutional deprivation:

> Prisoners have no constitutional right to purchase products at the same price as charged in retail stores. *Simpson v. Caruso,* 2009 WL 1010973 *3 (W.D. Mich., Apr. 14, 2009). *See McCall v. Keefe Supply Co.,* 71 F. Appx. 779, 780 (10th Cir. 2003) (allegation that prisoner was overcharged for goods at prison commissary failed to state a constitutional claim); *French v. Butterworth,* 614 F.2d 23, 25 (1st Cir. 1980) (no legal basis exists for a demand that inmates be offered items for purchase at or near cost); *Canell v. Department of Corrections,* 2010 WL 1608856 *6 (E.D. Wash., Apr.19, 2010) (inmates do not have a constitutionally protected right to be able to purchase items from the commissary at a particular price or to prevent the charging of exorbitant prices); *Jones v. Swanson Services Corp.,* 2009 WL 2151300 * 2 (M.D. Tenn., Jul 13, 2009) (inmates do not have a constitutionally protected right to purchase commissary items at low prices); *Floyd v. Emmet County Correctional Facility,* 2006 WL 1429536 *4 (W.D. Mich., May 23, 2006) (prisoners have no constitutionally guaranteed right to purchase commissary items at the same or lower price than charged at regular retail stores).

*Griffin v. Doe*, No. 1:10-cv-1987, 2011 WL 94563, at *1 (N.D. Ohio Jan. 11, 2011). *See also Ramsey v. Knox Cnty. Sheriff's Off. Jail & Facilities*, No. 3:20-cv-486, 2020 WL 6730990, at *3 (E.D. Tenn. Nov. 16, 2020) (holding same). This claim should be dismissed.

    E.    Claims on behalf of other inmates

Finally, Culberson may be seeking to raise some of these claims of behalf of other inmates at FCCC. (*See* ECF No. 1-1, PageID 13.) He lacks standing to do so. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (standing encompasses, among other things, "the general prohibition on a litigant's raising another person's legal rights") (citations omitted); *Corn v. Sparkman,* 82 F.3d 417, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) (unpublished table decision) ("A prisoner cannot bring claims on behalf of other prisoners.

18

A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights.") (citation omitted). More specifically, a prisoner does not have standing to bring a § 1983 claim on behalf of others. *See Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) (citing *Jones v. Caruso,* 569 F.3d 258, 276-77 (6th Cir. 2009)). To the extent that Culberson seeks or would seek to bring claims on other inmates' behalf, the claims should be dismissed.

### IV. Conclusion and Recommended Disposition

The undersigned Magistrate Judge concludes that the Complaint fails to state a claim against any Defendant on which relief may be granted, and therefore **RECOMMENDS** that the Court **DISMISS** the Complaint in its entirety under 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2).

The Undersigned further **RECOMMENDS** that the Court **CERTIFY** pursuant to 28 U.S.C. § 1915(a)(3) that, for the reasons discussed above, an appeal of any Order adopting this Report and Recommendations would not be taken in good faith, and therefore, deny Plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

### V. Notice Regarding Objections to this Report and Recommendations

If any party objects to this Report and Recommendations ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN DAYS** after being served with a copy thereof. Fed. R. Civ. P. 72(b). All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

<u>December 13, 2022</u>                                        <u>*/s/ Elizabeth A. Preston Deavers*</u>
                                                                                           ELIZABETH A. PRESTON DEAVERS
                                                                                           UNITED STATES MAGISTRATE JUDGE